**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **CRIMINAL NO. 17-CR-00030 (APM)** |
| **ANTONIO D. FOX,** | **:** | |
| | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S MEMORANDUM FOR PRETRIAL DETENTION**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion for pretrial detention of the defendant. On April 16, 2019, the government requested that Defendant Fox be detained pursuant to 18 U.S.C. § 3142(f)(1)(E) (firearm/dangerous weapon), of the federal bail statute. The government requests that the following points and authorities, as well as any other facts, arguments, and authorities presented at the detention hearing, be considered in the Court's determination regarding pretrial detention.

**INTRODUCTION**

On February 14, 2017, a grand jury returned an indictment charging Defendant Fox with one count of Unlawful Possession of Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), one count of Unlawful Possession of an Unregistered Firearm, in violation of 26 U.S.C. § 5861(d), and one count of Unlawful Possession of a Firearm, in violation of 22 D.C. Code § 4503(a)(1). The charges stem from the defendant's possession of ammunition and firearms on or about January 26, 2017. These items were recovered after emergency responders were called to Defendant Fox's residence to put out a fire that had been started in Defendant Fox's bedroom;

while firefighters were putting out the fire, they observed a significant amount of contraband and a search warrant was obtained for the defendant's residence.  For the reasons set forth below, there are no conditions or combination of conditions of release that will reasonably assure the appearance of the defendant and the safety of the community, and he should be held without bond pending trial.

## PROCEDURAL HISTORY AND APPLICABLE AUTHORITY

On February 3, 2017, an arrest warrant was issued by Magistrate Judge Harvey based on a criminal complaint charging Defendant Fox with: possession of ammunition after being convicted of felony punishable in excess of one year, in violation of 18 U.S.C. 922(g)(1); possession of firearms, specifically described, "any other weapon," not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. 5861(d); and possession of firearms, after having previously been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, in violation of 22 D.C. Code, Section 4503 (a)(1) (2001 ed.).

On February 14, 2017, a grand jury returned an indictment charging Defendant Fox with one count of Unlawful Possession of Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), one count of Unlawful Possession of an Unregistered Firearm, in violation of 26 U.S.C. § 5861(d), and one count of Unlawful Possession of a Firearm, in violation of 22 D.C. Code § 4503(a)(1). Law enforcement made numerous efforts to locate Defendant Fox to execute the arrest warrant, including reaching out to Defendant Fox's family members, however, law enforcement was

unable to locate him through these efforts.[1]   Law enforcement subsequently learned that

Defendant Fox had been arrested on May 15, 2018, in Erlanger, Kentucky.   At the time of his

arrest, Defendant Fox was in possession of a loaded Glock model 19 9mm semiautomatic

handgun (the firearm was under the front floor board at Fox's feet).   The firearm was in a holster

with an additional magazine which was also loaded.   A second spare magazine was located in a

bag in the back seat.   Defendant Fox was brought to D.C. on the outstanding arrest warrants in

the instant case.

Defendant Fox appeared for his initial appearance before Magistrate Judge Robinson on

April 16, 2019, and the Court granted the government's Motion for Temporary Detention and

scheduled a detention hearing for April 19, 2019.

Under the statute, pretrial detention must be supported by clear and convincing evidence

when the justification involves the safety of the community, and a preponderance of the evidence

when the justification involves the risk of flight.   *U.S. v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir.

1987).   There are four factors under Section 3142(g) that the Court should consider and weigh in

determining whether to detain the defendant pending trial: (1) the nature and circumstances of

the offense charged; (2) the weight of the evidence against the defendant; (3) his history and

characteristics; and (4) the nature and seriousness of the danger to any person or the community

that would be posed by his release.   *See* 18 U.S.C. § 3142(g).   A review and understanding of the

facts and circumstances in this case causes the government to ask the Court to conclude that

---

[1] Defendant Fox had a pending Contempt of CPO/TPO charge at the time that the arrest warrant
was issued in that case (2016 CCC 000130).  Law enforcement attempted to reach Defendant
Fox's lawyer in that case, but the lawyer was unable to provide any information regarding
Defendant Fox's whereabouts (and Defendant Fox remained on bench warrant status in that
case).  Defendant failed to appear for a February 2, 2017, non-jury trial and a bench warrant was
issued in that case by Superior Court Judge Michael Ryan.

there are no conditions or combination of conditions that would assure the safety of the community or the defendant's appearance in Court. Therefore, Defendant Fox should be detained pending trial.

### Nature and Circumstances of the Charged Offenses

The facts and circumstances of the instant offense raise significant concerns regarding the danger Defendant Fox poses to the community.   The firearms and ammunition that were recovered in this case were located after a fire had been started in the defendant's bedroom that resulted in significant damage to the residence and put his family members' safety at risk.

On January 26, 2017, at approximately 8:37 pm, the District of Columbia Fire Department's Engine 10 in the Trinidad Section of Northeast, Washington, DC, was alerted to the report of smoke coming from the second floor of 1114 Orren St., NE. Upon arrival, firefighters made entry into the residence and encountered a male at the top of the stairs who advised them he had extinguished the fire and then attempted to block them from proceeding further.  Firefighters could see an active fire in the second floor front bedroom and had to physically move the male aside to extinguish the fire because it appeared the male did not want them to enter the second floor front bedroom.

As part of fire suppression efforts, and the fact that the bedroom was so cluttered with clothes and ordinary combustibles, numerous items were removed from the second floor front bedroom to ensure the fire was extinguished and were ultimately placed in the front yard of the residence.  Fire investigators from the District of Columbia, Fire Investigation Unit and ATF Arson Task Force responded to conduct an origin and cause investigation into the fire.  As part of that investigation, investigators sifted through fire debris within the second floor front

bedroom and the debris placed in the front yard.  Investigators identified several possible ignition sources, including suspect material used to manufacture firearms, ammunition, suspect explosives, and other suspect bomb making material to include pipes, fuses, wires and switches both in the bedroom and within the fire debris from the bedroom that had been moved to the front lawn.

Interviews conducted with the owners and occupants of the residence identified Defendant Fox as the sole and lone occupant of the second floor front bedroom where the fire was extinguished.  Residents also informed investigators that Defendant Fox had left the location after the firefighters made entry into the residence. Two occupants of the residence identified Defendant Fox as being at the residence during the fire.

Metropolitan Police Department maintained security at the scene during the overnight hours of January 26, 2017, and into January 27, 2017.  On January 27, 2017, investigators obtained a District of Columbia Superior Court Search Warrant for the residence, 1114 Orren Street, NE, and for Defendant Fox's personal belongings that were removed from the second floor front bedroom and placed in the front yard of the residence during fire suppression efforts.  During the search, investigators seized numerous items including but not limited to:

- Aluminum Powder (fuel/tested/suspected);
- Tannerite exploding target (mixed/suspect explosive) ;
- Potassium Nitrate labeled 13-0-45 (oxidizer);
- "Dremel" toolbox modified and wired with various electronic switches;
- Suspected (homemade) firearm loaded with .25 auto round with attached magazine;
- Suspected (homemade) firearm "Zip Gun";
- Revolver (modified) SN A98394;
- .45 caliber ammunition (approximately 126 rounds);
- .380 caliber ammunition (approximately 87 rounds);
- .22 caliber ammunition (approximately 188 rounds);
- Numerous assorted ammunition and components;

- Numerous rounds "improvised" ammunition; and
- Winchester Triple Seven 209 rifle primers (approximately 53 rounds).[2]

On February 1, 2017, a number of exhibits recovered during the execution of the search warrant were submitted for testing and examination at the Firearms Technology Criminal Branch of the Bureau of Alcohol, Tobacco, Firearms and Explosives.  On February 2, 2017, a Firearms Enforcement Officer tested, examined, and classified the items.  The Examiner who examined the items made the following conclusions:

Exhibit 12:

 

- Is a homemade device which resembles a handgun. It is constructed of a section of square metal tube which contains a section of round metal tube identifiable as the barrel, and houses a spring-loaded firing pin assembly.

- To demonstrate that Exhibit 12 will expel a projectile by the action of an explosive, the Examiner first removed the projectile and powder load from a round of commercially available, Winchester brand, .25 ACP caliber ammunition. Using the primed cartridge case, the Examiner test-fired the Exhibit on February 1, 2017, at the ATF test range, Martinsburg, West Virginia. After loading the primed cartridge case into the chamber of the Exhibit, the Examiner retracted the spring-loaded handle to the rear and released it by pulling the trigger. Exhibit 12 successfully detonated the primer. Therefore, Exhibit 12 is capable of expelling a projectile by the action of an explosive. A full round of ammunition was not used during the test-fire in order to maintain the integrity of the Exhibit.

---

[2] *See* Exh. C (Photographs of some of ammunition recovered during search warrant).

Exhibit 14:



- Exhibit 14 is a device, constructed of a section of metal tube identifiable as the body with a second section of tubing inserted and epoxied into place. The second section of tubing is identifiable as a barrel. When assembled, the device resembles an ink pen. During the examination, the Examiner observed that Exhibit 14 lacks external marks of identification or a serial number. Lacking the required manufacturer's markings, the origin of the Exhibit cannot be determined.

- To demonstrate that Exhibit 14 will expel a projectile by the action of an explosive, the Examiner first removed the projectile and powder load from a round of commercially available, Winchester brand, .25 ACP caliber ammunition. Using the primed cartridge case, the Examiner test-fired the Exhibit on February 1, 2017, at the ATF test range, Martinsburg, West Virginia. After retracting the spring-loaded cocking handle, the Examiner inserted the primed cartridge case into the chamber of the Exhibit, and released the cocking handle. Exhibit 14 successfully detonated the primer. Therefore, Exhibit 14 is capable of expelling a projectile by the action of an explosive.

Exhibit 36:



- Exhibit 36 consists of a black-powder revolver frame manufactured in Italy by an unknown manufacturer and a cartridge conversion device.

- The drop-in conversion cylinder assembly consists of an unmarked converter ring and a six-round cylinder. As received, the drop-in conversion was equipped with two .22 long rifle sub-caliber devices and one 9mm sub-caliber device.

- The Examiner installed the drop-in conversion cylinder assembly in the revolver frame and test-fired the Exhibit on February 2, 2017, using commercially available, Winchester brand, .45 LC caliber ammunition. The exhibit successfully expelled a projectile by the action of an explosive.

- The revolver frame and the drop-in conversion cylinder assembly, in and of themselves (separately), are not subject to regulation under the provisions of the GCA; however, when they are combined, or are under the control of a person, the combination becomes a "firearm" as defined in 18 U.S.C. § 921(a)(3).

- Exhibit 36 also contains three modified .410 shotgun shells, two .22 LR caliber rounds of ammunition and one 9mm Luger round of ammunition. These rounds were inserted into the cylinder utilizing a sub-caliber adapter. A sub-caliber adapter facilitates the firing of ammunition which is smaller than the chamber of the host weapon.

Following his examination of the items, the Examiner made the following

conclusions about each of the items:

Exhibit 12:

- Exhibit 12 is a weapon which will expel a projectile by the action of an explosive; therefore, Exhibit 12 is a "firearm" as defined in 18 U.S.C. § 92l(a)(3)(A).

- Exhibit 12 is a device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive; therefore, it is an "any other weapon" as defined in 26 U.S.C. § 5845(e).

- Exhibit 12, being an "any other weapon", is also a "firearm" as defined in 26 U.S.C. § 5845 (a)(5).

- Exhibit 12 bears no manufacturer's marks of identification or a serial number as required by 26 U.S.C. § 5842.

Exhibit 14:

- Exhibit 14 is a weapon which will expel a projectile by the action of an explosive; therefore, it is a "firearm" as defined in 18 U.S.C. § 921(a)(3)(A).

- Exhibit 14 is a device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive; therefore, it is an "any other weapon" as defined in 26 U.S.C. § 5845(e).

- Exhibit 14, being an "any other weapon", is also a "firearm" as defined in 26 U.S.C. § 5845 (a)(5).

- Exhibit 14 bears no manufacturer's marks of identification or a serial number as required by 26 U.S.C. § 5842.

Exhibit 36:

- Exhibit 36 black powder frame and drop-in conversion cylinder assembly is a "firearm" as defined in 18 U.S.C. § 921(a)(3)(A).

- Exhibit 36 also contains "ammunition" as defined in 18 U.S.C. § 921(a)(l7)(A).

Of the items that were tested, the Examiner determined that Exhibits 12, 14, 36, meet the

definition of a "firearm" as required by both the D.C. Code and by 18 U.S.C. § 921(a)(3)(A).

Additionally, Exhibits 12 and 14 were found to be weapons which will expel a projectile by

the action of an explosive; Defendant Fox would be prohibited from possessing either item under 22 D.C. Code, Section 4503(a)(1) (2001 ed.).

Additionally, Exhibits 12 and 14 are classified as "any other weapon," as defined in 26 U.S.C. 5845(e) which require registration with the National Firearms Registration and Transfer Record.  A record search within the National Firearms Registration and Transfer Record revealed no registered firearms to Defendant Fox.  A query of the ATF Federal Licensing System revealed that Defendant Fox does not have nor ever applied for an ATF Federal Explosives License or Permit.

Additionally, for each exhibit described above, there was ammunition recovered during the search of the residence that could be fired from each of those devices. Specifically, Exhibits 12 & 14 can expel .25 ACP ammunition and Exhibit 36 can expel .410 rounds, .22 LR rounds, and 9 mm rounds.  There are no known commercial manufacturers of ammunition within the District of Columbia, hence each round of ammunition was shipped or transported in interstate commerce.

## Weight of the Evidence against the Defendant

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention.  The items seized during the course of this investigation were removed from Defendant Fox's bedroom (a bedroom that he was the only occupant of).  Evidence of his occupancy of the room was present throughout the room, including a Virginia Driver's license in Defendant Fox's name, as well as a health card in his name.  Family members who resided in the house advised law enforcement that the room was occupied by Defendant Fox.  Additionally, Defendant Fox was present at the residence when family members learned that the house was on

fire.

## Defendant Fox's History and Characteristics

Defendant Fox's criminal history and the facts and circumstances surrounding his flight from the jurisdiction following the fire at his residence also weigh in favor of detention.  At the time of the instant offense, Defendant Fox had the following convictions:

- Manufacture, Sale, Possession of Controlled Substances (Marijuana) , 4/7/2010 (CR09001295-00/02 – Arlington, Virginia) (2 years confinement, 1 year, 10 months, 27 days suspended; 3 years of supervised release);

- Violate Condition of Release, 10/6/2009 (GC09002734-00/01 – Arlington, Virginia) (10 days imposed);

- Failure to Appear, 2/12/2008 (GT06080933-01 – Virginia Beach, Virginia.

Additionally, at the time of the instant offense, Defendant Fox had a pending D.C. Superior Court case, charging Contempt of CPO/TPO (2016 CCC 000130).  Defendant failed to appear for a February 2, 2017, non-jury trial and a bench warrant was issued in that case by Superior Court Judge Michael Ryan.  Not only did he fail to appear in that case, but Defendant Fox was in violation of the terms of his pretrial release, which provided an additional warning regarding possession or purchase of a firearm (dated November 18, 2016).  *See* Attachment A (Condition of Release Firearms Addendum).   The nature of that charge – an inability to comply with court orders – and the convictions for failure to appear and violation of release conditions are evidence of Defendant Fox's inability to comply with court orders.

Additionally, at the time of the May 2018 arrest in Kentucky – when Defendant Fox was a fugitive in this case – he was in possession of a firearm and multiple magazines.[3]  *See*

---

[3] Defendant Fox was indicted by a Grand Jury in Kenton County, Kentucky, on the charge of Possession of a Firearm by a Convicted Felon, on or about May 22, 2018.  The case was

Attachment B (Condition of Release Firearms Addendum).   Together, these facts demonstrate that he presents a serious risk of obtaining another firearm, violating his release conditions, or failing to appear at Court, were he to be released under some form of conditions.   Additionally, the government is unaware of any residence that would ensure the safety of the community (at the time of the instant offense, he was living with family members and had stockpiled a significant amount of ammunition and had firearms).

### Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention.   The actions of the defendant pose an extreme danger to the community:   defendant, while on release in a domestic violence case where he was prohibited from possessing a firearm, had stockpiled a significant amount of ammunition and firearms.   He then fled from the jurisdiction and was subsequently arrested approximately 14 months later, in possession of another firearm and ammunition.

### There is No Condition or Combination of Conditions that Would Ensure the Defendant's Compliance with Court-Ordered Release Conditions or His Appearance in Court

The weight of the evidence, the gravity of the alleged offense, the defendant's criminal history, and the fact that he was on pretrial supervision (with conditions of release that barred him from possessing a firearm) at the time of the offense, provide compelling justification for the continued detention of the defendant until this case is resolved.   Given all of these facts and circumstances discussed above, as well as the Defendant's criminal history, including his

---

dismissed in October of 2018 by the local prosecutor to allow the case to be indicted in federal court in the Western District of Kentucky.  The U.S. Attorney's Office in the Western District of Kentucky has not indicted the case as of the filing of this memorandum.

repeated failure to comply with court orders, there are no conditions of release or combination of conditions of release that could ensure the safety of the community or Defendant's appearance in Court.

WHEREFORE, the Government requests that the Court order Defendant Fox to be detained without bond pending resolution of this case.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar 472845

By: _____/s/_____
LAURA CRANE
D.C. Bar 992454
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20001
(202) 252-7667
Laura.crane@usdoj.gov

Attachment A



# Superior Court of the District of Columbia
# Domestic Violence Unit

## <u>Condition of Release Firearms Addendum</u>
## <u>*Condiciones para la libertad: Suplemento sobre armas de fuego*</u>

AS A RESULT OF THIS CASE, IT MAY BE UNLAWFUL FOR YOU TO POSSESS OR PURCHASE A FIREARM, INCLUDING A RIFLE, PISTOL OR REVOLVER, OR AMMUNITION PURSUANT TO FEDERAL LAW 18 U.S.C. 922(G)(8) and/or 18 U.S.C. 922(G)(9). IF YOU HAVE ANY QUESTIONS WHETHER THIS LAW MAKES IT ILLEGAL FOR YOU TO POSSESS OR PURCHASE A FIREARM OR AMMUNITION, YOU SHOULD CONSULT AN ATTORNEY.

*Español:*

*COMO RESULTADO DE ESTE CASO, EN BASE AL ESTATUTO FEDERAL 18 U.S.C. 922(G)(8) Y/O 18 U.S.C. 922(G)(9) PUEDE SER ILEGAL QUE USTED POSEA O COMPRE ARMAS DE FUEGO, COMO POR EJEMPLO UN RIFLE, UNA PISTOLA O UN REVÓLVER O MUNICIONES. USTED DEBE CONSULTAR A UN ABOGADO SI TIENE ALGUNA PREGUNTA EN CUANTO A SI ESTA LEY LE PROHÍBE EL QUE USTED POSEA O COMPRE ARMAS DE FUEGO O MUNICIONES.*

| | |
|---|---|
| 11/18/16 | |
| Date | Judicial Officer |

The defendant acknowledges receipt of the warning regarding possession or purchase of a firearm.

*El acusado reconoce que ha recibido el aviso en relación a la posesión y compra de armas de fuego.*

Defendant's Signature (firma)

Attachment B

# KYIBRS REPORT: NARRATIVE

## COMMONWEALTH OF KENTUCKY

### SYNOPSIS:

On Tuesday, May 15th 2018 at approximately 2304 hours Officer Mathews observed Antonio Fox operating a motor vehicle that was stopped for a minor traffic violation.  Fox did not have any identification but gave verbal identification which was checked.  He was found to have two NCIC warrants, one through ATF and one through the US Marshals.  Fox stated that there was a firearm in the vehicle in the driver's area.  A loaded Glock model 19, 9mm semiautomatic handgun, ser #XGY414, was located under the front floor board at the driver's feet.  Also, the handgun was in a holster with an additional magazine which was also loaded.  Further, a second spare magazine was located in a bag in the back seat.  Through investigation it was learned that Fox is a prior convicted felon out of state.  The firearm was logged into evidence at the Erlanger Police Department Central Office.  Fox was charged with possession of a firearm by a convicted felon, arrested and transported to the Kenton County Detention Center without incident.

### INVESTIGATION:

### ATTACHMENTS:

### METHODS OF OPERATION:

Attachment C







